## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ONE BARBERRY REAL ESTATE HOLDING, LLC; FARM RIVER ROCK, LLC; JOHN PATTON, | ) ) ) | 3:17-CV-985 (SVN) |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| | ) | January 25, 2023 |
| JOSEPH MATURO, JR.; CHRISTOPHER SOTO; MICHAEL MILICI; TOWN OF EAST HAVEN, | ) ) ) | |
| *Defendants*. | ) | |

## <u>RULING AND ORDER ON PLAINTIFFS' MOTION *IN LIMINE*</u>

Sarala V. Nagala, United States District Judge.

This case centers on the conduct of the Town of East Haven (the "Town") and its officials—Joseph Maturo, Jr., then-mayor of the Town; Christopher Soto, then-Zoning Enforcement Officer; and Michael Milici, the Town's tax assessor (together with the Town, "Defendants")—when shutting down a quarry owned and operated by Plaintiffs. At the time of their conduct, Defendants maintained that the quarry did not comply with Section 31 of the Town's zoning regulations, and the Town's Zoning Board of Appeals ("ZBA") agreed. In a state law zoning appeal proceeding, the Connecticut Superior Court ruled in favor of Plaintiffs by concluding that the quarry was a legal, nonconforming use and therefore exempt from the Town's zoning regulations. In the present action, ahead of the bench trial on Plaintiffs' federal constitutional claims arising from the same events, Plaintiffs filed a motion *in limine*, seeking to collaterally estop Defendants from relitigating various issues decided by the state trial court in the zoning appeal. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion *in limine*, ECF No. 216.

I.       **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

A.  The Cease-and-Desist Orders

The Court assumes the parties' familiarity with the factual background of this case, set forth in more detail in the Court's ruling on Defendants' motions for summary judgment.  *One Barberry Real Estate Holding, LLC v. Maturo*, No. 3:17-cv-985 (KAD), 2021 WL 4430599, at *2 (D. Conn. Sept. 27, 2021).  Relevant to the present motion, Plaintiff Farm River Rock ("FRR"), owned by Plaintiff John Patton, has leased and operated a quarry located on the subject property for the purpose of "stone crushing, stone product manufacturing, and earth product excavation" since the mid-2000s.  *Id.*  Throughout 2013, the owners of the property, who leased it to FRR, were engaged in disputes with Attorney Joseph Zullo, an attorney for the Town, regarding the status of the quarry.  *Id.*  The property owners maintained that the quarry had historically operated on the property and therefore was "exempt from zoning and permitting requirements based on its pre-existing, non-conforming use as a quarry."  *Id.*  Attorney Zullo, on behalf of the Town, disagreed.  *Id.*

Nonetheless, on November 10, 2014, Frank Biancur, the Town's Planning and Zoning Administrator, "issued a decision addressed to [the property owner] in which he stated that 'there is no doubt that this property is a legal pre-existing nonconforming use' based upon evidence that the Property had 'operated as a quarry, gravel, and stone crushing site for well over 75 years, if not longer.'"  *Id.* (quoting Defs.' Ex. 11, ECF No. 105-12).  Plaintiffs represent that Biancur's 2014 decision prompted them to make "significant capital investments in the quarry."  *Id.* at *3.  In 2016, the property was sold to Plaintiff One Barberry Real Estate Holding, LLC ("One Barberry"), also owned by Patton, who continued the lease to FRR.  *Id.* at *1.

2

The zoning dispute between Plaintiffs and the individual Defendants—particularly Soto and Maturo—began to pick up steam in 2017. *Id.* at *3. In February of that year, after Soto received complaints that the quarry was engaged in activities that were prohibited by Section 31 of the Town's zoning regulations, he issued the first cease-and-desist order, directing Plaintiffs to apply for a special exception permit for those activities. *Id.* The parties met and conferred in March, and several attendees of that meeting testified that Attorney Zullo agreed with Plaintiffs' position that "the quarry was a legally existing, non-confirming use and that the Town could not lawfully regulate the quarry under Section 31." *Id.* In April, Soto issued a second cease-and-desist order, referring to both the activities referenced in the first order and other activities performed on the property that were also prohibited by Section 31 of the Town's zoning regulations absent a special exception permit. *Id.* at *4.

On May 9, 2017, Soto issued the third cease-and-desist order due to the property's ongoing violations of the Town's zoning regulations. *Id.* The order directed Plaintiffs to cease all operations immediately and apply for a special exception permit. *Id.* Plaintiffs appealed the cease-and-desist orders to the ZBA, which denied their appeal. *Id.* at *5.

B. <u>The State Court Zoning Appeal</u>

Plaintiffs then appealed the ZBA's decision to the Connecticut Superior Court pursuant to Connecticut General Statute § 8-8(b), and that court sustained the appeal. *Id.*; *One Barberry Real Estate Holding, LLC v. Zoning Bd. of Apps. for Town of East Haven*, No. LNDCV176085489S, 2019 WL 5543039, at *5, 7 (Conn. Super. Ct. Aug. 28, 2019). Relevant here, the court decided (1) that the Town was bound by Biancur's 2014 decision that the quarry was a legal, nonconforming use because Biancur's decision was validly issued, (2) that the quarry was not subject to Section 31 of the zoning regulations insofar as application of that regulation would

effectively bar the quarry from operating, and (3) that, as a result, Soto's cease-and-desist orders citing Section 31 were improper under Connecticut law.

Specifically, the court found that Biancur's 2014 decision that the quarry was a legal, nonconforming use was "not based upon a hypothetical or merely advisory, but, rather, a clear and definite interpretation of the zoning laws." *One Barberry Real Estate Holding, LLC*, 2019 WL 5543039, at *4. Because Biancur's 2014 decision was a clear and definite interpretation of the zoning laws, the Town was required to appeal that decision to the ZBA within the time period prescribed by Connecticut General Statute § 8-7, which it did not do. *Id.* at *4–5. Because the Town did not appeal that decision to the ZBA within the time period prescribed by Connecticut General Statute § 8-7, the Town could not subsequently seek review of the correctness of Biancur's decision. *Id.* at *5. The court further reasoned that, while Connecticut law provided for certain "exceptional" circumstances when a municipality could collaterally attack a previously unchallenged zoning decision, no such circumstances were present in this case. *Id.* In sum, the Town's failure to appeal Biancur's 2014 decision precluded it from collaterally attacking the decision in the state action. *Id.*

Accepting that the quarry was a legal, nonconforming use, the court then considered whether Section 31 of the zoning regulations could properly apply to the quarry. That regulation prohibited, among other things, the excavation of any natural mineral, the slashing of trees, and the use of power assisted machinery, except as permitted by a temporary special exception permit. *Id.* at *6. The state trial court found that the regulation did not apply to the quarry, given its status as a legal, nonconforming use, for several reasons. *Id.* at *7. Most importantly, Connecticut law provides that zoning regulations "cannot completely bar a legal, nonconforming use." *Id.* (citing *Cioffoletti v. Planning & Zoning Comm'n*, 24 Conn. App. 5, 8 (1991), and *Taylor v. Zoning Bd. of*

*Apps.*, 65 Conn. App. 687, 692 (2001)).  Therefore, the court concluded, Section 31 of the Town's zoning regulations did not apply to the quarry because, if it did, it would bar Plaintiffs' legal, nonconforming use.  *Id.*  The court further concluded that Soto's cease-and-desist orders citing that provision were therefore "improper."  *Id.*  Finally, because Soto's cease-and-desist orders were improper under the zoning regulations and Connecticut law, the ZBA's decision sustaining those cease-and-desist orders was contrary to law.  *See id.*  The Connecticut Appellate Court denied certification to appeal.  ECF No. 119-46.

### C.  The Present Action

While the state court zoning appeal was pending, Plaintiffs filed the present actions, which were eventually consolidated, in this Court.  Plaintiffs claim that Defendants violated various federal constitutional rights, Connecticut state constitutional rights, federal and state statutory rights, and Connecticut common law rights.  Following the Court's (Dooley, J.) ruling on Defendants' motions for summary judgment, five of Plaintiffs' claims remain live: (1) Plaintiffs' claim pursuant to 42 U.S.C. § 1983 against all Defendants that they deprived Plaintiffs of their property in violation of the substantive due process protection afforded by the Fourteenth Amendment; (2) Plaintiffs' claim pursuant to 42 U.S.C. § 1983 against all Defendants that they effectuated a regulatory taking in violation of the Fifth Amendment's Takings Clause; (3) Plaintiffs' claim pursuant to Article First, § 11 of the Connecticut Constitution against the Town for inverse condemnation; (4) Plaintiffs' common law claim of municipal estoppel against the Town; and (5) Plaintiffs' common law claim of slander of title against Milici.

Thereafter, the case was transferred to the undersigned, and a bench trial is scheduled to begin on January 30, 2023.  ECF Nos. 140, 183.  In advance of the trial, Plaintiffs filed the present motion *in limine*, ECF No. 216.  They seek to preclude Defendants from raising evidence and

arguments pertaining to four issues that, Plaintiffs contend, were litigated in the state court zoning appeal and decided by that court's decision sustaining their appeal.  Specifically, they seek to preclude Defendants from relitigating the following issues:  (1) that Biancur's 2014 Decision was valid; (2) that Section 31 of the zoning regulations did not apply to Plaintiffs' use of the property; (3) that the issued cease and desist letters were improper; and (4) that the ZBA had no reasonable basis for denying Plaintiffs' appeals.

## II.    LEGAL STANDARD

"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action." *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 296 (1991) (citing *Ashe v. Swenson*, 397 U.S. 436, 445 (1970)).  Pursuant to the U.S. Constitution's Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, and the corresponding Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  *See also Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000) ("To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state."); *Gooden v. State of Conn.*, No. 3:08-CV-1282 (JCH), 2009 WL 2407549, at *6 (D. Conn. Aug. 3, 2009) (explaining that "the court must look to Connecticut law to understand the preclusive effect of the state court judgment").  Accordingly, the Court applies the standard for collateral estoppel in Connecticut, which largely mirrors the federal standard.

Generally, "[c]ollateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party." *Aetna Cas. & Sur. Co.*, 220 Conn. at 303. "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the

first action.  It also must have been actually decided and the decision must have been necessary to the judgment." *Id.* at 296 (quoting *Virgo v. Lyons*, 209 Conn. 497, 501 (1988)).  "Furthermore, to invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." *Carnemolla v. Walsh*, 75 Conn. App. 319, 325 (2003) (alteration, citation, and internal quotational marks omitted).  *See also Roe v. City of Waterbury*, 542 F.3d 31, 41 (2d Cir. 2008) (explaining that, to invoke offensive collateral estoppel, a plaintiff must show that "(1) issues of both proceedings are identical; (2) the relevant issues were actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgement (*sic.*) on the merits").

Historically, privity or strict mutuality of parties had been required for the doctrine of collateral estoppel to apply.  *Aetna Cas. & Sur. Co.*, 220 Conn. at 300.  But the Connecticut Supreme Court, following the trend of other courts around the country, no longer considers the absence of mutuality of parties to bar the application of offensive collateral estoppel.  *Id.* at 300, 302.  *See also Doyle v. Universal Underwriters Ins. Co.*, 179 Conn. App. 9, 15 (2017) ("Under Connecticut law, mutuality of parties is not a prerequisite to the invocation of collateral estoppel.").

Because the doctrine of collateral estoppel applies differently to the Town and to the individual Defendants Soto and Maturo, the Court considers each type of defendant in turn.  In addition, Plaintiffs seek to employ offensive collateral estoppel as to four issues, which the Court considers in turn.

### III.     MUNICIPAL DEFENDANT

A. Privity

The application of collateral estoppel is proper against the Town, the municipal Defendant in the present action, because there is privity between the Town and the Town's ZBA, the defendant in the state court proceeding.  Privity is, "in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." *Ventres v. Goodspeed Airport, LLC*, 301 Conn. 194, 207 (2011) (quoting *Mazziotti v. Allstate Ins. Co.*, 240 Conn. 799, 814 (1997)).  In considering whether two parties are in privity for the purpose of collateral estoppel, the court considers the parties' "functional relationships" and whether the parties share "the same legal right." *Id.* (quoting *Mazziotti*, 240 Conn. at 814).  The Connecticut Supreme Court has held that a zoning board of appeals, the defendant in a prior state court zoning appeal, was in privity with the town and a zoning enforcement officer sued in his official capacity, who were defendants in a later action.  *Wade's Dairy, Inc. v. Town of Fairfield*, 181 Conn. 556, 560 (1980).  The court reasoned that the board was "created to carry out the mandates of the town as they pertain to zoning matters," and accordingly the board represented the municipality's rights in the prior action.  *Id.* at 561.

Similarly, with respect to the present action, the ZBA is a creature of the Town's municipal government, and it represented the Town's rights in the state trial court zoning appeal.  Thus, the ZBA and the Town are in privity, which undoubtedly permits the application of offensive collateral estoppel.

B.  Issues on Which Plaintiffs Seek Preclusion

*1. Validity of Biancur's 2014 Decision*

In the present action, the Town is collaterally estopped from contesting that Biancur's 2014 decision was valid.  Plaintiffs argue that Defendants have already collaterally attacked the validity of Biancur's decision in this litigation, and may attempt to further do so at trial.  Crucially, both the state court zoning appeal and the present action require the finder of fact to decide whether Plaintiffs' quarry is a nonconforming use, an issue which turns on the legal effect and validity of Biancur's 2014 decision.[1]  With respect to the present action, Plaintiffs' substantive due process claim requires the finder of fact to determine whether Plaintiffs had a vested property right, in the form of a legal, nonconforming use, protected by substantive due process.  *One Barberry Real Estate Holding, LLC*, 2021 WL 4430599, at *12.  Thus, the issue of whether Biancur's 2014 decision finding that the property was a legal, nonconforming use was validly issued is necessarily raised in the present action.  Similarly, the state court zoning appeal directly involved the validity of Biancur's 2014 decision, as the ZBA contended there that the decision was not valid because, among other reasons, Biancur had sustained a criminal conviction related to his official position as the Town's Planning and Zoning Administrator.  *One Barberry Real Estate Holding, LLC*, 2019 WL 5543039, at *5.  Thus, the identical issue—the validity of Biancur's 2014 decision—is necessarily raised in both actions.

Moreover, the ZBA had a full and fair opportunity to litigate the issue in the state court zoning appeal, which the Town does not contest.  In addition, the state trial court actually decided the issue when sustaining Plaintiffs' zoning appeal.  The crux of that court's holding was that Biancur's 2014 decision was a "clear and definite interpretation of the zoning laws," triggering the

---

[1] As noted below, Defendants have conceded that they will not argue "that the property does not have a pre-existing/non-conforming use" in the upcoming trial.  ECF No. 227 at 5–6.

Town's opportunity to appeal the decision to the ZBA pursuant to Connecticut General Statute §
8-7. *Id.* at *4. Because the Town did not timely appeal Biancur's decision, and because no
exceptional circumstances justified the untimely challenge, the court held that the quarry was a
legal, nonconforming use. *Id.* As noted above, this holding was necessary to the judgment of the
state court.

Accordingly, the Town is collaterally estopped from raising arguments or evidence to
contend that Biancur's 2014 decision was somehow invalidly issued. For avoidance of doubt, the
Court makes clear that Defendants also cannot argue that Plaintiffs' use of the property was *not* a
legal, nonconforming use, which Defendants "begrudgingly" conceded in connection with
summary judgment proceedings before this Court and have stated they will not argue at trial. *See
One Barberry Real Estate Holding, LLC*, 2021 WL 4430599, at *12; ECF No. 227 at 5–6.

### 2. Application of Section 31 of the Zoning Regulations

In addition, the Town is collaterally estopped from challenging the state trial court's
conclusion that Section 31 of the zoning regulations did not apply to the quarry in light of its status
as a legal, nonconforming use. With respect to the present action, the inapplicability of Section
31 of the zoning regulations to the quarry is relevant to the ZBA's motivation when denying
Plaintiffs' appeal, as it suggests that the ZBA was at best mistaken or at worst motivated by
unconstitutional animus. *One Barberry Real Estate Holding, LLC*, 2021 WL 4430599, a *10
(noting that the ZBA's decision to deny Plaintiffs' appeal, in light of Biancur's 2014 decision
regarding the legal, nonconforming status of the quarry, was "probative of ratification" of Maturo
and Soto's animus).

With respect to the state court zoning appeal, the inapplicability of Section 31 of the zoning
regulations to the quarry was the necessary second step of that court's conclusion. After explaining

that the quarry was a legal, nonconforming use, the state trial court held that Section 31 of the Town's zoning regulations, cited in Soto's final cease-and-desist order, did not govern the quarry because of that status. *One Barberry Real Estate Holding, LLC*, 2019 WL 5543039, at *7. Specifically, the court cited several cases for the proposition that zoning regulations, as a matter of law, "cannot completely bar a legal, nonconforming use." *Id.* (citing *Cioffoletti*, 24 Conn. App. at 8, and *Taylor*, 65 Conn. App. at 692). The court then reasoned that Section 31 of the Town's zoning regulations would operate to completely bar the quarry's operation, absent a special exception permit, in contradiction to Connecticut law. *Id.* Thus, the court concluded that Section 31 of the zoning regulations did not apply to the quarry. *Id.* This conclusion was actually and necessarily decided by the state trial court, and the ZBA, representing the Town's interest, had a full and fair opportunity to litigate the issue in the state trial court zoning appeal.

For its part, the Town contends that it does not intend to argue at trial that the special exception provision of Section 31 applied to the quarry. Rather, the Town contends that it intends to argue that Section 31 could have applied to the quarry in conjunction with the ZBA's issuance of a variance. ECF No. 227 at 4.

Whether the state trial court's decision collaterally estops this argument presents a closer question. As noted above, the state trial court reasoned that zoning regulations cannot, as a matter of law, completely bar a legal, nonconforming use, notwithstanding Section 31's provision for a procedure to obtain a special exception permit. *One Barberry Real Estate Holding, LLC*, 2019 WL 5543039, at *7. The cases on which the state court relied reasoned that requiring a property with a legal, nonconforming use to apply for a special exception permit to continue that use effectively destroyed the property's nonconforming status in violation of Connecticut law. *See Cioffoletti*, 24 Conn. App. at 8 (explaining that Connecticut law "protects the 'right' of a [property]

user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations"); *Taylor*, 65 Conn. App. at 696 (affirming the trial court's conclusion that, when the town enacted a regulation allowing the property's operations subject to a special permit, it "effectively destroyed" the property's nonconforming status). Neither of those cases, nor the state trial court's decision relevant here, offered a reason why their reasoning would not apply to variances, which similarly subject an otherwise legal, nonconforming property to a town's regulation. *See Galvak v. Town of Somers*, 267 F. Supp. 2d 214, 222 (D. Conn. 2003) (collecting cases for the proposition that any provision of an ordinance which diminishes a vested right in a legal, nonconforming use is "invalid").

That said, the state court did not clearly state that it considered the variance procedure when sustaining Plaintiffs' zoning appeal. Rather, the decision focuses entirely on the provision of Section 31 prohibiting the use absent a special exception permit, and it does not mention other provisions of the Town's zoning regulations providing for a variance. Considering the circumstances of the case, the state court's narrow focus likely reflected the fact that Soto's cease-and-desist orders directed Plaintiffs to seek a special exception permit pursuant to Section 31 and mentioned nothing about a variance. *See* ECF Nos. 105-16 (the February cease-and-desist order), 105-18 (the April cease-and-desist order), 105-25 (the May cease-and-desist order). Similarly, it does not appear that Section 31 contains any provision regarding the ZBA's variance procedure, so the state court's holding that Section 31 does not apply to the quarry cannot be read to encompass a conclusion about the ZBA's variance procedure.[2] In any event, the narrow scope of the state court's decision demonstrates that the court did not actually decide whether the Town's

---

[2] Neither party has provided the Court with a copy of the Town's zoning regulations in effect in 2017. Section 31 of the current version of the Town's zoning regulations, available on the Town's website and effective since 2022, contain no mention of the ZBA's variance procedure.

variance procedures would have permitted application of Section 31 to the quarry consistent with Connecticut law.  Given that the court did not even mention the issue, it appears that the Town did not have a full and fair opportunity to argue it in the zoning appeal.

Accordingly, the Town will be collaterally estopped from challenging the state trial court's conclusion that Section 31 of the zoning regulations did not apply to the quarry in light of its status as a legal, nonconforming use, but the Town will not be collaterally estopped from arguing that, notwithstanding the state trial court's holding, Section 31 of the zoning regulations could have applied to the quarry through the ZBA's variance procedure.

### 3. Propriety of Cease-and-Desist Orders

In addition, the Town is collaterally estopped from challenging the state trial court's conclusion that Soto's cease-and-desist orders were improper under Section 31 of the Town's zoning regulations and Connecticut law.  The state trial court held that the cease-and-desist orders "claiming zoning violations as a result of the quarry's operations were improper."  *Id.* at *7.  That holding flowed from the court's prior conclusions that the Town was bound by Biancur's 2014 decision that the quarry was a legal, nonconforming use, and that the quarry was not subject to Section 31 of the Town's zoning regulations.  In other words, the state trial court's conclusion that the cease-and-desist orders were improper under Section 31 and Connecticut law was the necessary third step of that court's ruling sustaining Plaintiffs' appeal.[3]  Thus, for all the reasons the Town is collaterally estopped from challenging those conclusions by the state trial court, the Town is

---

[3] The Court's conclusion that the Town is not collaterally estopped from arguing that Section 31 of the zoning regulations could have applied to the quarry through the ZBA's variance procedure does not require a similar outcome with respect to the propriety of the cease-and-desist orders.  As noted above, the cease-and-desist orders did not mention the ZBA's variance procedure.  To the extent the Town intends to argue that the Town and the ZBA *believed* that they could regulate the quarry through the variance procedure, such argument was not actually or necessarily raised in the state court zoning appeal.  Moreover, such argument would not disturb the state court's decision that the cease-and-desist orders, which specifically cited the special exception permit provision of Section 31, were improper as a matter of law under Section 31 and Connecticut law.

also collaterally estopped from challenging the state trial court's resulting conclusion that Soto's cease-and-desist orders were improper under Section 31 of the Town's zoning regulations and Connecticut law.

### 4. Reasonableness of ZBA's Decision

The Court denies Plaintiffs' motion *in limine* with respect to the fourth issue on which they seek preclusion.  Specifically, Plaintiffs contend that the state trial court held that the ZBA had no reasonable basis for denying Plaintiffs' appeals, and they urge the Court to preclude the Town from challenging that conclusion.  But the Court is not persuaded that the state court indeed reached such a holding.  To be sure, the court's legal standard provided that the actions of a zoning board of appeals are reviewable "only to determine whether they are unreasonable, arbitrary or illegal."  *One Barberry Real Estate Holding, LLC*, 2019 WL 5543039, at *2 (quoting *Woodbury Donuts, LLC v. Zoning Bd. of Apps.*, 139 Conn. App. 748, 757–58 (2012)).  The court's analysis, however, did not address the unreasonableness or arbitrariness of the ZBA's decision.  Rather, the court's conclusions regarding the legal effect of Biancur's 2014 decision and the inapplicability of Section 31 of the Town's zoning regulations centered on the illegality of the ZBA's decision, or, in other words, whether the ZBA's decision was "contrary to law."  *See id.* (quoting *Woodbury Donuts, LLC*, 139 Conn. App. at 757–58).  In light of the court's conclusion that the ZBA's decision was contrary to law, the court did not actually or necessarily decide whether the ZBA's decision was unreasonable or arbitrary as a factual matter, rendering collateral estoppel improper on this issue.

Moreover, Plaintiffs have not substantively addressed whether the issue presented in the present case—whether the Town violated Plaintiffs' substantive due process rights by acting in "an arbitrary or irrational matter," for example by ratifying Soto's and Maturo's politically-

14

motivated actions, *see One Barberry Real Estate Holding, LLC*, 2021 WL 4430599, at *12–13—is indeed identical to the issue presented in the state court zoning appeal—whether the ZBA's decision was unreasonable, arbitrary, or illegal, *see One Barberry Real Estate Holding, LLC*, 2019 WL 5543039, at *2.   Rather, Plaintiffs conclusorily contend that both actions concern the "reasonableness" or "arbitrariness" of the Town's actions, citing only to the Black's Law Dictionary definition of the word "arbitrary" to support their contention.   Given that the present case concerns substantive due process protections afforded by the U.S. Constitution, whereas the state court zoning appeal concerned the authority granted by Connecticut statutes to a municipal government to regulate property, the Court is not persuaded that the "reasonableness" or "arbitrariness" language appearing in the respective standards is necessarily conflated in the two distinct contexts.   Because Plaintiffs have not demonstrated that the issue presented in this action and the state court zoning appeal is identical, and because the state court did not actually or necessarily decide the issue, the Town will not be collaterally estopped from arguing that there was a reasonable basis for the ZBA's decision.

## IV.   INDIVIDUAL DEFENDANTS

Given that the individual Defendants face personal liability in the present action, the Court finds that it would be unfair to collaterally estop them from challenging the decisions reached by the state trial court in sustaining Plaintiffs' zoning appeal.

As a preliminary matter, the Court notes that the individual Defendants are not in privity with the Town or the Town's ZBA because they have been sued in their individual capacities in the present action.  *See Wade's Dairy, Inc.*, 181 Conn. at 561 (explaining that preclusion against a municipality was proper because a prior judgment was rendered against the municipality's zoning board of appeal as and zoning enforcement officer in his official capacity); *Everson v. Armstrong*,

697 F. App'x. 66, 67 (2d Cir. 2017) (summary order) (suggesting that a government employee sued in an individual capacity in a second action was not in privity with other officials sued their official capacities in a prior action); *Stancuna v. Sherman*, 563 F. Supp. 2d 349, 353–54 (D. Conn. 2008) (noting that although the Second Circuit has not expressly held that government employees in their individual capacities are not in privity with their government employers, several other circuits have so held); *see also* 18A C. Wright & A. Miller, *Federal Practice and Procedure*, § 4458 (3d ed.) ("The relationships between a government and its officials justify preclusion only as to litigation undertaken in an official capacity.").

As Plaintiffs point out, and as noted above, the Connecticut Supreme Court has explained that collateral estoppel may properly apply even in the absence of privity or strict mutuality of parties. *Aetna Cas. & Sur. Co.*, 220 Conn. at 300; *Doyle*, 179 Conn. App. at 15. The Connecticut Supreme Court has also recognized, however, that "circumstances may exist in which lack of mutuality would render application of collateral estoppel unfair." *Labbe v. Hartford Pension Comm'n*, 239 Conn. 168, 186 (1996) (citing *Aetna Cas. & Sur. Co.*, 220 Conn. at 303). The Connecticut Supreme Court directed courts to consider the factors and circumstances set forth in the Restatement (Second) of Judgments §§ 28 and 29 when determining whether mutuality of parties is required for the fair application of collateral estoppel. *Labbe*, 239 Conn. at 186–87. *See also Gooden*, 2009 WL 2407549, at *6–7 (considering whether the state correctional officer, sued in his individual capacity, could apply defensive collateral estoppel under §§ 28 and 29 of the Restatement); *Riverview East Windsor, LLC v. CWCapital LLC*, No. 3:10-CV-872 (RNC), 2012 WL 90152, at *4 (D. Conn. Jan. 10, 2012) ("Connecticut allows for nonmutual collateral estoppel in accordance with § 29 of the Restatement (Second) of Judgments, which lists factors to consider when deciding whether a party should be allowed to relitigate an issue against a new party.").

16

Together, §§ 28 and 29 of the Restatement list thirteen factors for a court to consider in deciding whether collateral estoppel should apply in a particular instance.  Importantly, § 29 provides a catchall provision to permit a court to refrain from applying collateral estoppel when "[o]ther compelling circumstances make it appropriate that the party be permitted to relitigate the issue."  Restatement (Second) of Judgments § 29(8).  The circumstances articulated in the Restatement "are illustrative rather than definitive of those that may be considered in determining application of issue preclusion."  Cmt. (j), Restatement (Second) of Judgments § 29 (1982).  Moreover, "[w]hat combination of circumstances justifies withholding preclusion is a matter of sound discretion," guided by the policy considerations underlying collateral estoppel, such as judicial economy and promoting the stability of judgments.  *Id.* Cmt. (b).  *See also Powell v. Infinity Ins. Co.*, 282 Conn. 594, 601–02 (2007) (expounding on the policy considerations underlying collateral estoppel).

Here, the individual Defendants' exposure to personal liability constitutes a compelling circumstance that renders the application of collateral estoppel against them unfair.  As a general matter, individual-capacity claims and official-capacity claims are treated differently under federal constitutional law and § 1983 because official-capacity claims involve distinct legal rights and interests than individual-capacity claims.  *See Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir. 1988) (explaining the differences between individual-capacity claims and official-capacity claims, including the different attendant defenses).  A claim against a government official in his official capacity constitutes "another way of pleading an action against an entity of which an officer is an agent."  *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  Thus, an official-capacity claim "is, in all respects other than name, to be treated as a suit against the entity" of which the official is an agent.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  For that reason, a

plaintiff "seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* A claim against a governmental official in his individual capacity, however, seeks "to impose *personal* liability upon a government official for actions he takes under color of state law." *Id.* at 165 (emphasis added). As a result, "an award of damages against an official in his personal capacity can be executed only against the official's personal assets." *Id.* at 166.

The Court finds it unfair to collaterally estop the individual Defendants from disputing the conclusions reached by the state trial court given that they did not have a full and fair opportunity to participate in the litigation of the zoning appeal *as individuals*. The individual Defendants face personal liability in the present action, but their personal liability was not necessarily implicated in the state court zoning appeal. Rather, that action merely concerned the lawfulness of the *ZBA's* actions in upholding Soto's cease-and-desist orders under the Town's zoning regulations and Connecticut law. To the extent that action implicated the liability of anyone at all, it implicated the liability of the Town, an entity in privity with the ZBA and thus adequately represented by the ZBA's interests. Because the personal liability of Maturo and Soto was not implicated in that action, however, they had no incentive to develop any defenses personal to them or responsive to their interests in that action. *See Walton v. Safir*, 122 F. Supp. 2d 466, 477 (S.D.N.Y. 2000) (noting that a police officer had no "incentive to develop defenses available to him personally" in the action because he was sued in his official capacity). Thus, the parties against whom collateral estoppel is sought did not have a full and fair opportunity to litigate the issues presented in the state court zoning appeal relative to their own interests.

Plaintiffs contend that collateral estoppel is proper against the individual Defendants to promote judicial economy in the upcoming trial and to promote the stability of the state trial court's

judgment in the zoning appeal.  While such interests generally support collateral estoppel, they do not carry the day here because, importantly, both the individual and municipal Defendants have conceded that they will not argue "that the property does not have a pre-existing/non-conforming use or that Section 31 applies on its face" in the upcoming trial.  ECF No. 227 at 5–6.  Rather, to the extent the individual Defendants attempt to relitigate any of the factual or legal issues addressed by the state trial court, they represent that such efforts would inform their motivations and beliefs, which are relevant to their individual liabilities and were neither relevant to nor meaningfully considered in the state court zoning appeal.  *See id.*  In light of that limited context, the interests in judicial economy and stability of judgments are not strongly undermined by the Court's decision not to collaterally estop the individual Defendants from presenting arguments and evidence on issues previously decided by the state trial court.

In sum, the present action directly implicates the individual Defendants' personal liability in a way the state court zoning appeal did not, which is a compelling circumstance that would render the application of collateral estoppel against them unfair.  Because the individual Defendants' personal liability was not implicated in the state court zoning appeal, and because the interests of judicial economy and stability of judgments carry less weight under the circumstances of the present case, collateral estoppel against the individual Defendants would be improper. Accordingly, Plaintiffs' motion *in limine* is denied with respect to the individual Defendants on all issues.

### V.   SUMMARY

Given the overlapping nature of the issues with respect to the Town and the individual Defendants, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion *in limine*, ECF No. 216.  The scope of the Court's ruling is as follows:

- The Town will be collaterally estopped from arguing or presenting evidence that Biancur's 2014 decision that the quarry was a legal, nonconforming use was invalid.  The individual Defendants will not be collaterally estopped from arguing or presenting evidence that Biancur's 2014 decision was somehow invalid, to the extent that such argument or evidence is consistent with their earlier concessions in this case.

- The Town will be collaterally estopped from arguing or presenting evidence that Section 31 of the zoning regulations applied to the quarry.

  - The individual Defendants will not be collaterally estopped from arguing or presenting evidence that Section 31 applied to the quarry, to the extent that such argument or evidence is consistent with their earlier concessions in this case.

  - Moreover, no Defendants will be collaterally estopped from arguing or presenting evidence that, notwithstanding the inapplicability of Section 31 on its face, Section 31 could have applied to the quarry through the ZBA's variance procedure.

- The Town will be collaterally estopped from arguing or presenting evidence that Soto's cease-and-desist orders were proper under Section 31 of the Town's zoning regulations, cited therein, and Connecticut law.  The individual Defendants will not be collaterally estopped from arguing or presenting evidence that the cease-and-desist orders were proper under Section 31 and Connecticut law to the extent that such argument or evidence is consistent with their earlier concessions in this case.

- No Defendants will be collaterally estopped from arguing or presenting evidence about whether the ZBA had a reasonable basis for denying Plaintiffs' appeal.

## VI.     CONCLUSION

For the reasons described above, Plaintiffs' motion *in limine*, ECF No. 216, is GRANTED

IN PART and DENIED IN PART.

**SO ORDERED** at Hartford, Connecticut, this 25th day of January, 2023.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE