UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ONE BARBERRY REAL ESTATE HOLDING, LLC; FARM RIVER ROCK, LLC; and JOHN PATTON,<br>    *Plaintiffs*,<br><br>v.<br><br>JOSEPH MATURO, JR.; CHRISTOPHER SOTO; MICHAEL MILICI; and TOWN OF EAST HAVEN,<br>    *Defendants*. | 3:17-CV-985 (SVN)<br><br><br><br><br><br><br><br><br><br>April 26, 2024 |

### RULING ON PLAINTIFFS' 59(e) MOTION TO AMEND THE JUDGMENT

Sarala V. Nagala, United States District Judge.

Following the entry of judgment against Defendants post-trial, Plaintiffs seek, pursuant to Federal Rule of Civil Procedure 59(e), to amend the judgment to award prejudgment interest on the entirety of the $9,465,832 in compensatory damages awarded to Plaintiff Farm River Rock, LLC ("FRR") by the Court. Defendants oppose the motion, arguing that Plaintiffs are not entitled to prejudgment interest or, alternatively, that interest should only be awarded on a portion of the damages award and at a lower interest rate.

For the reasons described below, the Court GRANTS in part and DENIES in part Plaintiffs' motion. Specifically, the motion is GRANTED insofar as the Plaintiffs seek prejudgment interest, and DENIED insofar as they seek the interest to be awarded at the prime interest rate. Instead, the Court applies the Treasury interest rate, for a total prejudgment interest award of $1,225,346. The judgment shall be amended accordingly.

### I. FACTUAL & PROCEDURAL BACKGROUND

This case has a lengthy and complex background, the parties' familiarity with which is presumed. The Court sets forth only the background necessary to explain its decision.

Plaintiffs, the owners of a quarry, filed this action against Defendants for, in relevant part, violating their constitutional rights by wrongfully shutting down the quarry's operations pursuant to a cease-and-desist order issued on May 9, 2017. After five years of litigation, a thirteen-day bench trial, post-trial briefing, and oral argument, the Court issued its Memorandum of Decision, ECF No. 326. The Court found Defendants Maturo, Soto, and the Town of East Haven liable for violating Plaintiffs' substantive due process rights, for interfering with their constitutionally protected property interest in an arbitrary and irrational manner. ECF No. 326 at 5.

The Court ultimately awarded $9,465,832 in compensatory damages to Plaintiff FRR. *Id.* at 6. This figure constituted "FRR's lost profits as a result of the conduct of the Town, Maturo, and Soto." *Id.* at 86. In calculating the damages award, the Court adopted the "lost profits" method utilized by both Plaintiffs' accounting expert, Joseph DeCusati, and Defendants' accounting expert, Gary Liddicoat. *Id.* at 131–32. Put simply, this method involved forecasting the future cash flows of FRR[1] (in a world where the quarry was never shut down), and subtracting from that forecast the cash flows FRR would actually realize in mining the quarry or had realized in that time through mitigation.[2] Each forecasted cash flow—and, accordingly, the damages award—was discounted to its present value, which the Court defined as May 9, 2017, the day the quarry was shut down by Defendants. *Id.* at 170. The two experts applied the same discount rate of 15.57%,

---

[1] The future cash flows of FRR were calculated through 2038, based on the Court's calculation to a reasonable certainty that this is when FRR would have run out of minable materials at the quarry if the quarry had never been shut down by Defendants. *Id.* at 151–52.

[2] The quarry, which stopped operating in May of 2017, did not become fully operational again until November of 2022. *Id.* at 129. The Court found that, although Plaintiffs were legally entitled to resume operations in December of 2019, due to their successful appeals of the cease-and-desist order, Plaintiffs were financially unable to do so. *Id.* at 127. Accordingly, Plaintiffs sold 50% of their interest in the quarry and formed a new entity, East Haven Trap Rock Quarry, LLC ("EHTRQ"), in partnership with individuals who "could bring cash, equipment, and the ability to get credit," which [Plaintiffs] needed to restart the quarry operation." *Id.* at 128. The future cash flows that were subtracted from the but-for forecasted cash flow encompassed any cash flows FRR had experienced prior to the formation of EHTRQ, the cash flows of EHTRQ (divided by two to represent Plaintiff Patton's and his wife's total 50% interest in EHTRQ), and future cash flows of EHTRQ projected through 2043, when the mining materials are expected to run out (also divided by two for the same reasons). *Id.* at 178 n.98, 192 (Ex. 13), 195 (Ex. 15).

and this rate was adopted by the Court. *Id.* To arrive at the ultimate damages figure, the Court took FRR's projected discounted cash flow had the quarry not been shut down ($12,343,266), and subtracted FRR's actual discounted cash flow between 2017–2021 ($239,891) and FRR's projected discounted cash flows through EHTRQ ($2,637,543), to arrive at $9,465,832 in damages. *Id.* at 196 (Ex. 16).

The Court recognized in its decision that prejudgment interest may be awarded, though it declined to award it contemporaneously, noting that Plaintiffs were free to file a motion on the issue of prejudgment interest pursuant to Rule 59(e). *Id.* at 182 n.102.

Plaintiffs did so and, in the motion before the Court, they argue that the Court should find prejudgment interest is warranted in this case in order to fully compensate Plaintiffs for the time period between the damage suffered in 2017 and the judgment awarded in 2023, and that it should be calculated using the variable average prime interest rate ("prime rate") for that time period. Defendants, for their part, argue in opposition that Plaintiffs have already been adequately compensated, since the damages awarded by the Court encompassed speculative future profits, and so prejudgment interest is not warranted. Alternatively, they argue that interest should only be awarded on the "non-speculative" portion of the award, which corresponds to the May 10, 2017–December 31, 2019, period when Plaintiffs were subject the cease-and-desist order, and/or should be calculated using the lower average one-year constant maturity Treasury yield rates ("Treasury rate"), not the prime rates urged by Plaintiffs.

## II.   LEGAL STANDARD

Whether to award prejudgment interest in a suit to enforce a federal right is a matter of the Court's discretion. *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998). When exercising this discretion, the Court should consider: "(i) the need to fully compensate the wronged party for

3

actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* (citation omitted). "Prejudgment interest is usually a necessary component of any award intended to make a plaintiff whole, because it compensates a plaintiff for delay in the receipt of relief." *Rao v. New York City Health & Hosps. Corp.*, 882 F. Supp. 321, 326 (S.D.N.Y. 1995). However, "[a]wards of prejudgment interest must not result in over-compensation of the plaintiff," and the "speculative nature of the damages in question will always be relevant to a sound decision on a consideration of whether prejudgment interest should be awarded." *Wickham Contracting Co. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 834, 836 (2d Cir. 1992). Overall, the inquiry is animated by "considerations of fairness," rather than any "rigid theory of compensation." *S.E.C. v. Contorinis*, 743 F.3d 296, 308 (2d Cir. 2014) (quoting *Blau v. Lehman*, 368 U.S. 403, 414 (1962)).

### III.   DISCUSSION

The parties agree on the factors for the Court to consider. Thus, the question is whether these factors support an award of prejudgment interest[3] and, if so, on what portion of the damages interest should be awarded and at what rate.

#### A.  Whether to Award Prejudgment Interest

The Court finds that prejudgment interest is warranted in this case, for the reasons described below.

---

[3] Plaintiffs also note that they "preserve[] [their] request for mandatory post-judgment interest," though noting that the Court need not specifically award post-judgment interest. Pls.' Br. in Supp. of Mot. to Amend the J., ECF No. 334-1 at 6 n.1 (citing 28 U.S.C. § 1961(a)). Although Plaintiffs do not specifically request relief from this Court, as 28 U.S.C. § 1961 provides for mandatory post-judgment interest and Defendants do not offer any opposition to this point, the Court also holds that Plaintiffs are entitled to post-judgment interest, to be calculated in accordance with the statute.

### 1. Need for Full Compensation

First, for Plaintiffs to receive full compensation for their losses, they must receive prejudgment interest. The Court agrees with Plaintiffs that, because the entire damages award was discounted to its 2017 value, Plaintiffs have not yet been compensated for the "delay in the receipt of relief" for the time period between 2017 and 2023. *See Rao*, 882 F. Supp. at 326. And although Defendants are correct that, as a general matter, prejudgment interest is "not appropriate with respect to an award of damages for future losses," *see Gierlinger*, 160 F.3d at 875, this is not the case when the award is discounted to the date of injury (rather than to the date of judgment). *See, e.g.*, *In re Conn. Nat'l Bank*, 928 F.2d 39, 43 n.5 (2d Cir.1991) ("The general proposition that prejudgment interest is not allowable on future losses . . . is inapplicable to the sum of the 'present' value of future payments that have been discounted back to the date of loss.") (citation omitted); *Rinaldi v. SCA La Goutte, D'Or*, No. 16-CV-1901 (VSB), 2022 WL 17370031, at *3 (S.D.N.Y. Dec. 2, 2022) ("When future losses are discounted to present value, an award of prejudgment interest is still required."); *720 Lex Acquisition LLC v. Guess? Retail, Inc.*, No. 09-CV-7199 (AJN), 2015 WL 4900188, at *4 (S.D.N.Y. Aug. 17, 2015) (noting that prejudgment interest need not be awarded when future losses are discounted to the date of judgment, though it should be awarded when losses are "discounted back to the date of breach" to fully compensate a plaintiff). Thus, while the damages award encompasses future payments to Plaintiffs (between 2023 and 2038/2044), the fact that these future losses, like the past losses, were discounted back to the present value of date of injury in 2017 weighs heavily in favor of awarding prejudgment interest.[4]

---

[4] Plaintiffs argue that the damages award was not an award for future losses, because the discounting makes it an award for the loss that "occurred on May 10, 2017." ECF No. 334-1 at 13; Pls.' Reply Br., ECF No. 339 at 7–8. Regardless of whether the damages award is framed as containing future losses or not, the Court finds that the relevant point here is that all loss encompassed by the award was discounted to 2017. *See Usher v. Corbis-Sygma*, No. 03-CV-4366 (BSJ), 2008 WL 11450443, at *3 (S.D.N.Y. Jan. 29, 2008), *aff'd*, 320 F. App'x 109 (2d Cir. 2009) (recognizing that award reflecting the value of lost property was not an award for "future losses," since it reflected the reasonable value of the property at the time of loss, when discounted).

### 2. *Fairness and Relative Equities*

The Court also finds that principles of fairness weigh in favor of awarding prejudgment interest, and rejects Defendants' arguments that prejudgment interest would result in a windfall for Plaintiffs. First, an award of prejudgment interest is fair and equitable because, in theory, Defendants "incur[red] [their] obligation to make the plaintiff whole the instant that the injury occur[red];" thus, Plaintiffs should not be penalized for the fact that they had to "wait until the litigation has run its course before realizing a judgment." *See McCrann v. U.S. Lines, Inc.*, 803 F.2d 771, 773 (2d Cir. 1986).

Defendants' primary contention is that the equities weigh against the award of prejudgment interest because Plaintiffs' "future damages are highly speculative and attenuated from Defendants' alleged misconduct." *See* Defs.' Opp. Br., ECF No. 338 at 16. They argue that, at most, they were responsible for a two-year delay in quarry operations (2017–2019)[5], and that the majority of the damages award relates to Plaintiffs' decision to form the EHTRQ entity, a decision which was unforeseeable to Defendants and ultimately resulted in at least a 50% diminution of Plaintiffs' projected future profits from the quarry. *Id.* at 16–18.

The Court generally disagrees with Defendants' characterization of the award. Although the damages award necessarily involved making numerous assumptions about the nature of Plaintiffs' business, the Court repeatedly noted that all aspects of the damages were calculated to a "reasonable certainty," *see, e.g.*, ECF No. 326 at 150, 162, 181, that the damages were "compensatory," *see, e.g., id.* at 86, 181, and that they were designed to compensate Plaintiffs for the harm caused by Defendants, *see, e.g., id.* at 126. Moreover, the Court specifically found that

---

[5] Defendants repeat their already-raised argument that, in fact, Plaintiffs had the right to continue operations throughout the entire time period, pursuant to Conn. Gen. Stat. § 8-7. ECF No. 338 at 11 n.3. As the Court has already found that Plaintiffs had a reasonable belief that they could not resume operations pursuant to this statute, *see* ECF No. 326 at 101–02, the Court rejects Defendants' attempt to relitigate this issue.

the formation of EHTRQ was relevant to Plaintiffs' damages and served to *mitigate* Plaintiffs' losses, *see id.* at 129, and that Defendants failed to carry their burden of demonstrating Plaintiffs' mitigation was insufficient, *see id.* at 176.

The Court finds the cases cited by Defendants that decline to award prejudgment interest distinguishable, and not directly on point. For instance, in *Augustin v. Jablonsky*, 819 F. Supp. 2d 153, 179 (E.D.N.Y. 2011), the Court declined to award prejudgment interest where the amount of damages attributable to plaintiffs' injuries was "not ascertainable with any precision." Likewise, in *Tretola v. Cnty. of Nassau*, No. 08-CV-3225 (DRH) (WDW), 2014 WL 2866095 (E.D.N.Y. June 24, 2014), the Court found the plaintiff's damages (awarded by a jury) "highly speculative" where they were based "solely on Plaintiff's assertion that he would have received significantly more" but for defendant's conduct. *Id.* at *2. Here, to the contrary, the Court was presented with significant testimony, including expert testimony on both sides, which allowed it to quite precisely and carefully calculate Plaintiffs' economic damages to a "reasonable certainty." And, while the *Tretola* court also noted that there was an insufficient nexus between the defendants' wrongdoing and the plaintiff's voluntary decision to conduct a distress sale to justify granting prejudgment interest, *see id.*, the Court here has already squarely rejected Defendants' argument that it was unnecessary for Plaintiffs to engage in the EHTRQ transaction, *see* ECF No. 326 at 175. Thus, the Court rejects Defendants' position that the damages award is too speculative and attenuated to justify the award of interest, especially given the clear need to fully compensate Plaintiffs, as discussed above. *See Gem Fin. Serv., Inc. v. City of New York*, No. 13-CV-1686 (RPK) (RER), 2023 WL 5831129, at *2 (E.D.N.Y. Sept. 8, 2023) ("While the somewhat approximate nature of the lost-profits analysis in this case is a countervailing consideration, it does not outweigh the interest in fully compensating the plaintiff.").

Defendants further argue that the damages award already "insulates Plaintiffs from bearing the full level of risk normally associated with operating a business," such as "flooding and other natural disasters, falling demand, rising prices, and indeed, the likelihood of persistent community opposition . . . and/or further government efforts to regulate or limit the use." ECF No. 338 at 21. Once again, the Court disagrees. As pointed out by Plaintiffs, the damages award (and the discount rate itself), factors in and accounts for risk (thereby reducing the damages award due to a higher discount rate)—it does not insulate from risk. *See* ECF No. 326 at 135 ("The discount rate accounts for the risks of the cash flows into the future."). In addition, the discount rate of 15.57% appears to be on the relatively high end, further indicating the accounting of risk. *Cf. Usher*, 2008 WL 11450443, at *3 (declining to utilize 20% discount rate and adopting the "2% rate that is widely accepted in this Circuit") (citing *Ammar v. United States*, 342 F.3d 133, 148 (2d Cir. 2003)).[6] Thus, providing Plaintiffs with interest on the award would not result in the windfall that Defendants suggest. Moreover, to the extent Defendants had the opportunity to make such arguments at trial and failed to do so, the Court does not find their unfounded allegations of business risk persuasive at this juncture.

Lastly, Defendants argue, without citation, that the Court should consider the fact that they are a municipality funded by the taxpayers of East Haven, while Plaintiffs are a "mining operation that has caused serious environmental degradation." ECF No. 338 at 22. As Defendants have provided no support for either argument, at trial or in their briefing, the Court does not find that either weighs against granting prejudgment interest.

---

[6] Indeed, Plaintiff Patton strongly disagreed with his expert's use of such a high discount rate. ECF No. 326 at 134.

8

Overall, then, the Court finds that fairness and equity weigh in favor of granting prejudgment interest.[7]

### 3. Remedial Purpose of 42 U.S.C. § 1983

As noted by both parties, Section 1983 does not specifically provide for prejudgment interest. Nonetheless, Section 1983 has a broad remedial scheme "to fully compensate individuals for harm suffered as a result of a constitutional violation." *Rao*, 882 F. Supp. at 326. Accordingly, courts regularly award prejudgment interest in Section 1983 cases, so long as the other factors support doing so. *See, e.g.*, *Connor v. Ulrich*, 153 F. Supp. 2d 199, 205 (E.D.N.Y. 2001*); Gem Fin. Serv.*, 2023 WL 5831129, at *2 (awarding prejudgment interest on jury award for unlawful search and seizure); *Milde v. Hous. Auth. Of Town of Greenwich*, No. 3:00CV2423 (AVC), 2006 WL 6908276, at *7 (D. Conn. Dec. 20, 2006) (noting that "courts routinely award pre-judgment interest to prevailing parties in Section 1983 cases"); *River Oaks Marine, Inc. v. Town of Grand Island*, No. 89-CV-1016S, 1992 WL 373533, at *4 (W.D.N.Y. Nov. 24, 1992) (finding prejudgment interest appropriate in § 1983 case given the statute's "underlying purpose" to "compensate for deprivations of constitutional rights"); *see also Miner v. City of Glens Falls*, 999 F.2d 655, 662 (2d Cir. 1993) (upholding award of prejudgment interest in § 1983 case for violation of procedural due process). Like these courts, the Court finds that the broad remedial and compensatory purpose of the statute supports awarding prejudgment interest on the compensatory damages award here, especially in light of the need to fully compensate Plaintiffs.

---

[7] The Court notes that it does not find that either party should be penalized for any delay in litigation and therefore delay in the receipt of judgment. Despite that this Court ultimately found in favor of Plaintiffs and held Defendants liable for their unconstitutional conduct in shutting down the quarry, the Court made no findings with respect to their conduct in this litigation, and is not prepared to find now that Defendants are responsible for the six-year trajectory of this litigation, particularly when those six years encompassed an unprecedented global pandemic. Although Plaintiffs make much of the fact that they made offers of settlement which could have ended this litigation sooner, *see* ECF No. 334-1 at 10–11, the Court agrees with Defendants that, without some allegation that Defendants rejected these offers in an attempt to create a delay, this is irrelevant, *see* ECF No. 338 at 23 n.12. Thus, the Court finds the delay in the entry of judgment does not tip the scale either way.

*4. In Sum*

Considering the factors above, the Court finds that prejudgment interest is warranted in this case, on the entire damages award, in order to fully compensate Plaintiff and in light of the fairness and equitable considerations at stake. The Court next turns to the calculation of that interest.

B. <u>What Interest Rate to Use</u>

Like the question of whether to award prejudgment interest at all, the question of what rate to use is "very much at the discretion of the district court." *River Oaks Marine*, 1992 WL 373533, at *8; *see also SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) ("The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion[.]") (citation omitted). In exercising its discretion, the "same considerations that inform the court's decision whether or not to award interest at all should inform the court's choice of interest rate." *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000).

Plaintiffs argue that this Court should use the prime rate, while Defendants argue for the Treasury rate. Both rates are regularly used by the courts in this Circuit. *Compare*, *e.g.*, *Spears v. Liberty Life Assurance Co. of Bos.*, No. 3:11-CV-1807 (VLB), 2020 WL 2404973, at *6 (D. Conn. May 12, 2020) (applying prime rate, rather than Connecticut's statutory 10% pre-judgment interest rate, in ERISA case, as prime rate would "adequately and objectively serve as compensation to Spears for the 'lost use of money wrongly withheld' without 'penalizing the defendant,' as numerous courts in this Circuit have found," and citing cases) (citations omitted) (cleaned up); *River Oaks Marine*, 1992 WL 373533, at *8 (finding in unconstitutional takings case that "the adjusted prime rate is a better reflection of the marketplace and more closely akin to full

compensation") *to Rivera v. W. Haven Smile Dental, LLC*, No. 3:16-CV-252 (VAB), 2019 WL 13295527, at *14 (D. Conn. May 30, 2019) ("Courts in the Second Circuit generally use the annual average Treasury bill rate as stated in 28 U.S.C. § 1961(a) and compound that rate annually."); *Black v. New England Computer Services, Inc.*, No. 3:18-CV-2101 (JAM), 2022 WL 702504, at *5 (D. Conn. Mar. 9, 2022) ("Most courts in the Second Circuit calculate prejudgment interest by applying the rate provided for postjudgment interest in 28 U.S.C. § 1961, the Federal Reserve's weekly average one-year constant maturity Treasury yield.").

The Court will apply the variable Treasury rate here. Although the Court does not find the damages award so speculative that no interest should be awarded at all, it does find that there is inherent uncertainty in the damages award, reflecting a decades-long future projection period. This warrants awarding interest at the lower rate, rather than increasing Plaintiffs' already substantial damages by almost 35%. *See Gem Fin. Serv.*, 2023 WL 5831129, at *2 (describing the "somewhat approximate nature" of lost-profits damages analysis as a "countervailing consideration" in prejudgment interest analysis). While the Court acknowledges that the Treasury rate has fluctuated greatly, and has been very low during the relevant period, *see* Pls.' Mot. to Amend J. Ex. 2, ECF No. 334-3 at 2, the Court does not find that this fact outweighs the overall equity, balancing all of the relevant factors, of awarding Plaintiffs a more conservative amount of prejudgment interest. *See Tretola*, 2014 WL 2866095, at *4 (applying Treasury rate of .0013 despite the rate being "rather low," partially in light of damages Plaintiff had already received); *see also New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 131 (2d Cir. 2001) (describing United States Treasury Bills as "short-term, risk-free obligations"); *Indep. Bulk Transp., Inc. v. Vessel Morania Abaco*, 676 F.2d 23, 27 (2d Cir. 1982) (noting that "Plaintiff is entitled to the income which the monetary damages would have earned, and that should be measured by interest on short-

term, risk-free obligations," although affirming award of prejudgment interest at higher percentage).

As both parties agree on the calculation of prejudgment interest using the average 1-year constant maturity Treasury yield, *see* ECF No. 334-3 at 2; Defs.' Opp. Br. Ex. 1, ECF No. 338-1 at 2, the Court adopts these calculations as its own and awards Plaintiffs $1,225,346.00 in prejudgment interest.

## IV.  CONCLUSION

For the reasons described herein, Plaintiffs' motion is GRANTED IN PART AND DENIED IN PART.  Specifically, the motion is GRANTED insofar as the Court awards prejudgment interest, and DENIED insofar as the Court calculates interest at the Treasury rate, not at the prime rate.  Accordingly, Plaintiffs are awarded $1,225,346 in prejudgment interest, and an amended judgment shall issue accordingly.


**SO ORDERED** at Hartford, Connecticut, this 26th day of April, 2024.


 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE